UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| In re: | Case No. 17-55525 |
| MICHAEL A. MEDA, *pro se*, | Chapter 7 |
| Debtor. | Judge Thomas J. Tucker |

**OPINION AND ORDER REGARDING FEE APPLICATIONS**

**I. Introduction**

This case is before the Court on two fee applications, one by the Chapter 7 Trustee and one by the Trustee's counsel. (In this case the Trustee and his counsel are in the same law firm). The applications are:

(1) the interim fee application filed by the Chapter 7 Trustee's attorney on October 7, 2019, entitled "First Interim Application of Attorney for Trustee for Services Rendered Between December 14, 2017 Through October 7, 2019" (Docket # 51, the "Attorney Fee Application"), seeking fees of $48,835.00 plus reimbursement of expenses in the amount of $1,189.70, which was granted on an interim basis on November 4, 2019 (Docket # 59);

and

(2) the fee application filed on July 15, 2021 by the Chapter 7 Trustee, entitled "Trustee Application for Final Compensation and Reimbursement of Expenses" (Docket # 94, the "Trustee Fee Application"), seeking a fee of $8,250.00 plus reimbursement of expenses in the amount of $74.31.

No timely objections to the fee applications were filed. But the Court concluded that a hearing was necessary. The Court stated the following in the Order setting the hearing:

> The Court notes that collectively the applicants seek fees totaling $57,085.00, plus reimbursement of expenses. By comparison, it appears that the applicants' efforts benefitted the bankruptcy estate, at most, in the amount of $100,000.00 (the total gross receipts listed in the Trustee's Final Report, Docket # 96). Thus, the fees requested, if approved, would amount to 57% of the amount collected with the assistance of applicants' services.
>
> The purpose of the hearing is to determine whether the requested

fee amounts should be reduced, given the amount of the benefit to the estate in this case. *See, e.g.*, *In re The Village Apothecary, Inc.*, 626 B.R. 893 (Bankr. E.D. Mich. 2021), *aff'd.*, 2021 WL 2102598 (E.D. Mich. May 25, 2021); *In re Allied Computer Repair, Inc.*, 202 B.R. 877, 887-89 (Bankr. W.D. Ky. 1996); 11 U.S.C. §§ 330(a)(2), 330(a)(3)(C), 330(a)(3)(D), 330(a)(3)(F), 330(a)(4)(A)(ii).[1]

The Court held the hearing, by telephone, on October 6, 2021. The Chapter 7 Trustee and the attorney for the Chapter 7 Trustee (both of whom are from the same law firm, as noted above), appeared at the hearing. At the end of the hearing, the Court took the fee applications under advisement. The Court now will rule on the fee applications.

**II. Discussion**

The Court has discussed the law governing fee applications in Chapter 7 cases in detail, in an opinion published earlier this year. *See In re The Village Apothecary, Inc.*, 626 B.R. 893 (Bankr. E.D. Mich. 2021), *aff'd.*, 2021 WL 2102598 (E.D. Mich. May 25, 2021). Rather than repeat that lengthy discussion, the Court incorporates it by reference here.

Applying the framework used in *Village Apothecary*, the Court finds and concludes the following.

First, the Court calculates the "lodestar amount" with respect to the Attorney Fee Application, and finds that the lodestar amount is the amount requested in the application, namely $48,835.00. This is the product of the total time spent by the Chapter 7 Trustee's counsel times the hourly rates charged by counsel, all as reflected in the itemization of fees that was filed with the application.[2]

Second, there is no comparable "lodestar amount" calculation to make with respect to the

---

[1] Order Setting Hearing on Fee Applications (Docket # 99) (footnote omitted).

[2] Docket # 51, Exhibit 4.

Trustee Fee Application, because the fee requested by the Trustee is calculated as a commission, applying the percentage maximums contained in 11 U.S.C. § 326(a) to the disbursements by the Trustee to parties in interest in this case other than the Debtor. *See* 11 U.S.C. §§ 330(a)(7), 326(a). The fee amount requested by the Trustee in this case is the *maximum* amount that can be awarded under these Bankruptcy Code sections. But under § 326(a), the Trustee's fee under these sections still must be "a reasonable compensation under section 330" of the Code.

Third, with respect to the fee applications of both the Trustee and the Trustee's counsel, and under 11 U.S.C. § 330, the Court must determine what is a "reasonable" fee amount, after considering all of the relevant factors set forth in §§ 330(a)(3) and 330(a)(4), and the Court may, in its discretion, consider the other factors identified by the United States Court of Appeals for the Sixth Circuit in *In re Boddy*, 950 F.2d 334, 338 (6th Cir. 1991). In addition to the lodestar amount ("reasonable hours actually worked and a reasonable hourly rate"), the Court may, in its discretion, consider the following factors, among others: "the novelty and difficulty of the issues, the special skills of counsel, **the results obtained**, and whether the fee awarded is commensurate with fees for similar professional services in non-bankruptcy cases in the local area. *Boddy*, 950 F.2d at 338 (citation omitted) (emphasis added).

Fourth, the Court has considered all of the factors in §§ 330(a)(3) and 330(a)(4), and all of the factors identified in *Boddy*, and has determined that the total fees requested by the Trustee and his counsel are higher than what is reasonable, and should be reduced to the extent described below. In making this determination, the Court is exercising its discretion to make downward adjustments to the fees requested, including the lodestar fee amount of the Trustee's counsel. Under *Boddy*, the Court has discretion to do so based on a consideration of "the results obtained" in this case by the Trustee and his counsel. *See, e.g., Village Apothecary*, 626 B.R. at 898-99,

904-05 (discussing the *Boddy* case).

In considering "the results obtained" in this case, the Court has considered both "the amount in controversy and the results obtained." *See id.* at 904, 909-15. The Court has done this even though, in the Court's view, it is not necessary to consider the "amount in controversy" when considering the "results obtained." For the reasons suggested by this Court in *Village Apothecary*, under *Boddy*, it is permissible for the Court to consider the "results obtained" without considering the "amount in controversy." *See Village Apothecary*, 626 B.R. at 904-05, 906.[3]

In this case, the result obtained by the Trustee and his counsel was to obtain $100,000.00 from the liquidation of the non-exempt property of the bankruptcy estate. This entire amount was obtained from the Trustee's settlement of a fraudulent transfer action brought by the Trustee against the Debtor's non-filing spouse and her business. (Adversary Proceeding No. 18-4531, *Michael A. Stevenson, Trustee v. Elizabeth Meda, et al.*).

Considering the results obtained, the Court concludes that the total amount of the fees requested in this case, $57,085.00 (the lodestar attorney fee amount plus the Trustee's requested fee amount), is excessive. The total fees requested, if approved, would amount to 57% of the amount collected with the assistance of applicants' services. And, as the Trustee's final report shows, if the fees are allowed in the full amount requested, the non-priority unsecured creditors

---

[3] There is, however, at least one decision by the district court in this district that held otherwise. That is the decision of the district court on the second appeal in the *Village Apothecary* case. *See* 626 B.R. at 904. This Court is not bound by that district court decision in this case, as a matter of *stare decisis*. *See In re Wylie*, 630 B.R. 68, 73 (Bankr. E.D. Mich. 2021) and cases cited therein; *In re Harbin*, 626 B.R. 888, 890 n.1 (Bankr. E.D. Mich. 2021) and cases cited therein. This Court respectfully disagrees with the district court's decision in *Village Apothecary* on this issue.

in this case will receive a distribution equal to only 1% of their allowed claims.[4]

"The bankruptcy court has 'broad discretion in determining attorney fees.'" *Village Apothecary*, 626 B.R. at 913 (citations omitted). The Court is convinced that it may, and should, in its discretion, reduce the total of fees to be allowed in this case to an aggregate amount of no more than $50,000.00, which is 50% of the total amount recovered by the Trustee and his counsel in this bankruptcy case. The Court views this as generous to the Trustee and the Trustee's counsel. And, in the Court's judgment, this "'strikes a fair and appropriate balance between the need to pay the bankruptcy estate's professionals a reasonable fee for their work, while at the same time making sure that 'the creditors in this case may receive a fair and meaningful distribution on their allowed claims.'" *Village Apothecary*, 626 B.R. at 913.

The result is the same if the Court considers and makes a comparison of the "amount in controversy" in this bankruptcy case with the "results obtained." Such a comparison can be done in at least two ways: (1) first, by comparing the $100,000.00 results obtained with the amount the Trustee *sought* to obtain in litigation of the bankruptcy estate's claim(s) and otherwise from the liquidation of the estate's assets, *see Village Apothecary*, 626 B.R. at 909-11; or, (2) second and alternatively, by comparing the amount the creditors other than the Trustee and his counsel (the "other creditors") will receive with the total amount of the other creditors' allowed claims in this case. *See id.* at 911.

As for the first such measure, the record shows that the Chapter 7 Trustee's amended complaint filed in the adversary proceeding sought to avoid and recover two transfers, labeled as the "Yacht Transfer" and the "MPR Transfer." The amended complaint alleged that the

---

[4] *See* Trustee's Final Report (Docket # 96) at pdf page 15. The Internal Revenue Service has a $34,426.39 priority claim that will be paid in full, due to its priority over the other unsecured claims. *See id.*

bankruptcy estate's interest in the avoidance and recovery of the Yacht Transfer was $25,000.00.[5] The amended complaint did not allege a specific value for the avoidance and recovery of the MPR Transfer, but it sought to recover the value of all the assets of the Debtor's business, which the Debtor had transferred pre-petition.[6] During the hearing on the Fee Applications, the Trustee's counsel stated that the Trustee and she had believed that the combined value of both of the fraudulent transfer claims was $150,000.00 to 200,000.00. After the Court dismissed all counts of the Trustee's amended complaint with respect to the MPR Transfer, however,[7] the Trustee sought and obtained this Court's approval to settle all claims in the adversary proceeding for $100,000.00.

Based on these facts, the Court finds that the "amount in controversy," as measured in the first way described above, was $150,000.00 to $200,000.00. By that measure, the Trustee's "results obtained" of $100,000.00 amount to 50% to 67% of the "amount in controversy." This shows partial, but not complete, success by the Trustee in his litigation.

Comparing the "results obtained" with the "amount in controversy" in the second, alternative way described above, however, presents a bleaker picture. The Court finds from the Chapter 7 Trustee's Final Report that the total amount of allowed unsecured claims in this case, other than the administrative claims of the Trustee and its attorneys for fees and expenses, is the sum of (1) a priority claim held by the Internal Revenue Service in the amount of $34,426.39; plus (2) a total of $683,040.54 in non-priority unsecured claims,[8] for a total amount of

---

[5] *See* Trustee's Amended Complaint (Adv. No. 18-4531) at ¶¶ 12, 33-34, 46.

[6] *See id.* at ¶¶ 42-46.

[7] *See* Order Granting Defendants' Motion to Dismiss in Part, and Denying that Motion in Part (Docket # 47 in Adv. No. 18-4531).

[8] *See* Trustee's Final Report (Docket # 96) at pdf page 15.

$717,466.93.

If the total of these creditors' claims ($717,466.93) is considered the "amount in controversy," then "the appropriate measure of the 'results obtained' to compare it to would be the total amount to be paid to those creditors, after payment of the allowed fees and expenses of the Trustee and his attorneys. *See Village Apothecary*, 626 B.R. at 911. Measured in this way, and as the Trustee's Final Report shows, the "results obtained" for the non-priority unsecured creditors would be only 1% of the $683,040.54 total amount of their claims.[9]

Given these numbers, and regardless of which method is used to compare the "results obtained" with the "amount in controversy," the Court reiterates its conclusion that the fees to be allowed in this case should be reduced to no more than an aggregate amount of $50,000.00.

## III. Conclusion and Order

For the reasons stated above,

IT IS ORDERED that:

1. The Court will allow the expenses requested in the fee applications in the full amounts requested, but the Court will allow fees only in amounts that, in the aggregate, do not exceed $50,000.00. The allowance of fees and expenses will be made by separate orders, to be entered at a future date, after the filing of a stipulation, or the passage of the time period, described in Paragraph 2 below.

2. The fee applicants may, if they wish, file a stipulation agreeing to a specific allocation among themselves of the fees to be allowed in this case.[10] Any such stipulation must be filed no

---

[9] *See id.* As noted above, the Internal Revenue Service's $34,426.39 priority claim will be paid in full.

[10] In any such stipulation, of course, the fee applicants may, if they wish, reserve their right to appeal the Court's reduction of their fees from the full amounts requested in the fee applications.

later than January 5, 2022. And upon filing any such stipulation, the fee applicants must submit proposed orders that are consistent with the stipulation.

      3. If the fee applicants do not timely file a stipulation of the type described in Paragraph 2 above, the Court may schedule a further hearing concerning the appropriate allocation of fees to be made in this case, or may file an order resolving that issue without first holding such a hearing.

**Signed on December 22, 2021**



/s/ Thomas J. Tucker
_____
**Thomas J. Tucker**
**United States Bankruptcy Judge**